UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60028-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

LUKE JOSELIN,

    Defendant.
_____/

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE INEXTRICABLY
INTERTWINED EVIDENCE AND RULE 404(b) EVIDENCE**

    The government submits this notice of intent to introduce inextricably intertwined and Rule 404(b) evidence at Defendant Luke Joselin's trial, which begins August 15, 2022.

    This case is about Joselin's efforts to enrich himself and others by defrauding the Paycheck Protection Program ("PPP"), which Congress created to ease pandemic-related economic harms. Through the PPP, lenders offered businesses potentially forgivable government-backed loans. Joselin and his co-conspirators abused the program, obtaining several PPP loans through fraud. Some of the loans they obtained through the scheme were in the names of unwitting victims.

    At trial, the government will introduce evidence that in addition to the charged PPP loans, Joselin and his co-conspirators applied for loans through a separate pandemic relief program: the Economic Injury Disaster Loan ("EIDL") program. As witnesses will testify, some of these EIDL applications were themselves fraudulent, while others contained representations inconsistent with the representations in the charged PPP loan applications. The government will also introduce evidence that before the pandemic, Joselin and his co-conspirator, Judlex Jean Louis, jointly possessed stolen victim personal identifying information ("PII"). Jean Louis will explain that the pair always intended to use this PII for fraud and that the PPP just provided the best opportunity.

## BACKGROUND

### A. Summary of Charged Offenses

On February 24, 2022, a federal grand jury sitting in the Southern District of Florida returned an indictment charging Joselin with conspiracy to commit wire fraud, nine associated counts of wire fraud, and two associated counts of aggravated identity theft. (DE 1). The indictment alleges in Count 1 that Joselin, Judlex Jean Louis, Renaldo Harrison,[1] and others conspired and used interstate wires to seek and obtain fraudulent PPP loans. In certain specific instances of wire fraud, as charged in Counts 2 through 6, Joselin and his co-conspirators sought PPP loans of about $20,000 each for sole proprietorships that did not actually exist. In two of these instances, as charged in Counts 11 and 12, Joselin and Jean Louis applied for PPP loans for non-existent sole proprietorships using the names and PII of two victims, J.A.G.C. and T.D. And in still other instances, as charged in Counts 7 through 10, Joselin and his co-conspirators sought PPP loans of about $180,000 each for businesses which either operated on a smaller scale than the applications claimed or had not operated at all for many years.

The PPP loan applications Joselin and his co-conspirators submitted included false statements about the purported business applicant's income, average monthly payroll, or number of employees—figures that drove the PPP loan eligibility formula. In support of these falsehoods, Joselin and his co-conspirators submitted fabricated 2019 tax forms. The government must show at trial that Joselin and his co-conspirators knowingly and willfully engaged in this conduct.

### B. Proposed Evidence

Part of the government's proof of the charged wire fraud conspiracy and wire fraud counts

---

[1] Jean Louis and Harrison were charged separately and pled guilty. *United States v. Jean Louis*, 20-60140-CR-Singhal (S.D. Fla.); *United States v. Harrison*, 21-60265-CR-Scola (S.D. Fla.).

is that some of the same businesses Joselin and his co-conspirators used to submit PPP loan applications were also used to submit suspect EIDL applications. The four businesses for which the conspirators submitted the PPP loan applications charged in Counts 7 through 10 of the indictment—Joselin's companies 24Hour Printing, Inc ("24Hour Printing") and Hug a Print LLC ("Hug a Print"), Jean Louis's company Pricerite LLC ("Pricerite"), and Harrison's company Skicas LLC ("Skicas")—also submitted EIDL applications within the timeframe of the conspiracy charged in Count 1. All but the Pricerite EIDLs were then funded by SBA into bank accounts controlled by Joselin (24Hour Printing and Hug a Print) or Harrison (Skicas). Joselin's EIDL applications for 24Hour Printing and Hug a Print contained sworn representations inconsistent with the figures Joselin provided in the PPP loan applications charged at Counts 7 and 8 for the same businesses.

To prove Joselin's participation in the submission of the EIDLs, the government would introduce records of EIDL applications submitted to the SBA, testimony from co-conspirator Harrison about the preparation of and submission of an EIDL application at Joselin's suggestion, Joselin's communications referencing the EIDLs, and loan, bank, and subscriber records.

Separately, as to the conspiracy charged in Count 1 and the aggravated identity theft charged in Count 12, part of the government's proof is that Joselin and Jean Louis possessed multiple victims' stolen PII years before the charged conduct; contemplated using this information for fraud before the onset of the pandemic; and finally used the information—including T.D.'s name and social security number—when the PPP presented the opportunity. To prove Joselin's conduct, the government will offer Jean Louis's testimony and corroborating communications.

## ANALYSIS

### A. The Proposed Evidence is Admissible as Inextricably Intertwined

"Evidence of criminal activity other than the offense charged is not extrinsic, provided that the evidence is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008) (citing *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (citation omitted)); *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.").

Evidence of the 24Hour Printing, Hug a Print, Pricerite, and Skicas EIDLs is admissible as inextricably intertwined with the charged offenses. These EIDLs arose out of the same discussions that led to the submission of the charged PPP loan applications. The EIDL applications occurred during the same timeframe as the charged conspiracy. Statements made in the sworn EIDL applications contradict implausible statements made in the charged PPP loan applications, bringing the truth of the charged PPP loan applications into question. And much of the most critical evidence in this case—for instance communications between Joselin and Harrison referencing both PPP loans and EIDLs, Joselin's bank records reflecting both EIDL and PPP deposits, and testimony from both co-conspirators regarding the conspiracy's overarching goal to pilfer pandemic relief aid—is impossible to disaggregate without creating a jilted and incomplete presentation for the jury.

Additionally, evidence of Joselin's and Jean Louis's joint possession of multiple victims' PII before the pandemic—and their shared desire to monetize that PII before the PPP came into existence—is inextricably intertwined in that it goes to the setup of the offenses charged in Counts 1 and 12. This evidence demonstrates Joselin's fraudulent and deliberate intent to use PII with Jean Louis in the PPP loan fraud conspiracy, and that Joselin knowingly used T.D.'s information during and in relation to submitting the fraudulent T.D. PPP loan application.

For the reasons above, the evidence proposed in this notice is inextricably intertwined with the charged conduct. *See Ellisor*, 522 F.3d at 1269; *Williford*, 764 F.2d at 1499.

### B. The Proposed Evidence is Admissible Under Rule 404(b)

Even if the Court views the proposed evidence as extrinsic, it is admissible under Rule 404(b). Other-acts evidence is admissible for any purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" with respect to the charged offense. Fed. R. Evid. 404(b). Rule 404(b) is a rule of "inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity."  *See United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004) (quoting *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989)).  The Eleventh Circuit evaluates the admissibility of other-acts evidence using a three-part test: (1) "the evidence must be relevant to an issue other than defendant's character"; (2) "the government must offer sufficient proof so that the jury could find that defendant committed the act"; and (3) the risk of undue prejudice must not outweigh substantially the probative value. *Ellisor*, 522 F.3d at 1267.

As to the first part of the test, the evidence of the 24Hour Printing, Hug a Print, Pricerite, and Skicas EIDLs and of Joselin's pre-pandemic possession of victim PII are admissible under Rule 404(b) because they are relevant for myriad purposes other than to show Joselin's criminal

propensity: to prove plan, knowledge and willfulness, identity, and lack of accident. F.R.E. 404(b).

For example, the 24Hour Printing EIDL application, which contains Joselin's true social security number, shows the falsity of the different social security number Joselin used to apply for a PPP loan for his purported sole proprietorship as charged in Count 2. Likewise, the 24Hour Printing EIDL application shows the implausibility of payroll figures in the 24Hour Printing PPP loan application because the 2019 revenue and cost figures reported in the EIDL application are not consistent with the sizeable monthly payroll figure in the PPP application. In another example, the Skicas EIDL application was an integral part of discussions between Joselin and his co-conspirator Harrison about obtaining illicit funds and was the source of far more fraud proceeds to Harrison than the PPP loan charged in Count 4. Moreover, the Hug a Print, Pricerite, and Skicas EIDL applications were all submitted soon after the reinstatement of the respective company with FDOC following a lengthy period of dormancy, a plan that both Harrison and Jean Louis attributed to Joselin. And finally, all four EIDLs were submitted during the same timeframe as the charged PPP loan applications, tending to show that Joselin and his co-conspirators acted deliberately with the purpose of obtaining as much money from pandemic relief programs in as short a timeframe as possible, regardless of legitimate business need.

Moreover, Joselin's possession of others' PII with Jean Louis before the pandemic, and their shared intention to use that information fraudulently before applying for PPP loans, negates what will likely be Joselin's defense: that he was unaware that Jean Louis intended to use PII on scheme PPP loan applications.

Regarding the second part of the Rule 404(b) test, the government can present sufficient proof to show that Joselin participated in the submission of the relevant EIDLs and had others' PII pre-pandemic as set forth above, including testimony and documents.

Finally, as to the third part of the Rule 404(b) test, the probative value of the government's proffered evidence is not substantially outweighed by the risk of unfair prejudice. "Factors to be considered [in determining the risk of unfair prejudice] include whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007). The charged PPP loan applications and the proffered EIDL applications happened around the same time. Further, Joselin will certainly contest the issue of intent. As in many fraud cases, intent is one of the central issues in this case. The proffered evidence, regarding both the EIDL applications and Jean Louis' and Joselin's shared possession of others' PII, is crucial to establishing Joselin's intent to defraud: an element that is notoriously hard to prove. *United States v. Manoocher Nostari–Shamloo*, 255 F.3d 1290, 1292 (11th Cir. 2001) ("A defendant's intent is often difficult to prove and often must be inferred from circumstantial evidence.").

Moreover, any unfair prejudice from the admission of the proposed evidence can be cured by a limiting instruction. The Court could instruct the jury against improperly considering the proposed evidence for Joselin's criminal propensity and presume that the jury would follow that instruction. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224 (11th Cir. 1993) (concluding prejudice could be mitigated by giving a cautionary instruction on the limited use of such evidence).

[This space left intentionally blank.]

## **CONCLUSION**

For the reasons above, the government requests that the Court admit the evidence described above as inextricably intertwined and pursuant to Federal Rule of Evidence 404(b).

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: _____
Kiran N. Bhat
Assistant United States Attorney
Florida Bar No. 1008370
99 NE 4th Street
Miami, Florida 33132-2111
Phone: (305) 961-9103
Email: Kiran.Bhat@usdoj.gov

Michael B. Homer
Assistant United States Attorney
Court ID No. A5502497
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9289
Email: Michael.Homer@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on July 25, 2022.

/s/ *Kiran N. Bhat*
Kiran N. Bhat
Assistant United States Attorney